**VESTAR DEVELOPMENT II, LLC,**
**an Arizona limited liability,**
**Plaintiff–Appellant,**

v.

**GENERAL DYNAMICS CORPORATION, a corporation, Defendant–Appellee.**

No. 99–56455.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 2001

Filed May 10, 2001

Gregory A. Post, Post, Kirby, Noonan & Sweat, San Diego, California, for the plaintiff-appellant.

Richard T. Franch, Jenner & Block, Chicago, Illinois, for the defendant-appellee.

Before: HUG, and B. FLETCHER, Circuit Judges, and SAMUEL P. KING, District Judge.[1]

HUG, Circuit Judge:

The prospective buyer of a parcel of property brought this action against the prospective seller for breach of an agreement to negotiate. The prospective buyer expressly did not seek reliance damages. The only damages sought by the buyer were $48,000,000 in lost profits it expected to make by constructing a shopping center on the parcel it sought to buy and leasing space to merchants. Because an agreement of sale was never reached, the terms of which would be necessary to determine lost profits, we affirm on the grounds that the only damages sought can not be proven with reasonable certainty, as required by California law. Jurisdiction is based on diversity of citizenship, and the substantive issues are governed by California law.

## I. Factual Background

Defendant–Appellee General Dynamics owned a tract of land in San Diego, California, that contained approximately 240 acres. In January 1994, Plaintiff–Appellant Vestar Development II, L.L.C. ("Vestar") began negotiating to purchase a 50-acre portion of that tract. On July 24, 1997, Vestar sent a Letter of Understanding ("LOU") to General Dynamics. The LOU was signed on behalf of Vestar. At the bottom of the last page, General Dynamics' Staff Vice President signed it "agreed." The LOU "sets forth the proposed business terms and conditions which will provide the basis for completing a formal Purchase & Sale Agreement." Paragraph 27 of the LOU states that General Dynamics agrees to negotiate exclusively with Vestar for ninety days.[2] In a subsequent letter dated October 20, 1997, General Dynamics sought to extend the negotiating period by sixty days. Vestar signed the letter "accepted and agreed." At an unspecified time after October 1997, General Dynamics informed Vestar that it would be selling the entire 240-acre tract to a third party.

## II. Procedural History

Vestar filed suit in California Superior Court for the County of San Diego on May 12, 1998, alleging breach of the agreement to negotiate. General Dynamics removed this diversity case to the United States District Court for the Southern District of California. The district court granted General Dynamics' motion to dismiss on

---

1. The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

2. Paragraph 27 stated: "Seller agrees to negotiate with Purchaser exclusively during the next ninety (90) day period to complete a mutually agreeable Purchase & Sale Agreement. If the parties are unable to reach final agreement on the formal Purchase & Sale Agreement during such period, neither party shall have any further obligation to the other."

the grounds that Vestar had provided no consideration.

On October 8, 1998, Vestar filed a First Amended Complaint which set forth the consideration that it had provided. General Dynamics again moved to dismiss. The district court held that Vestar alleged sufficient consideration to state a claim for breach of an agreement to negotiate. However, because the only damages sought were lost profits, the district court granted General Dynamics' motion to dismiss. Vestar's First Amended Complaint alleged that it had been damaged by "the inability to purchase and develop" the 50–acre parcel and sought damages in excess of $48,000,000. The district court reasoned that "[t]his amount is entirely too speculative" and that "causation is too attenuated." "Defendant could have upheld its end of the bargain, and the sale could still have fallen through due to some intervening event, or the Parties simply could have reached an impasse."

In response, Vestar moved for clarification and/or reconsideration. The district court denied the motion. It reasoned that Vestar could not prove damages "with reasonable certainty" as required by California law. It also noted that damages for breach of an agreement to negotiate are usually confined to reliance damages. It expressed agreement with such a rule because (1) to do otherwise would effectively transform an agreement to negotiate into a final contract, and (2) there is no way of knowing what the terms of the ultimate agreement would have been. Because Vestar was seeking only lost profits, it requested that in the event its motion was denied, the complaint be dismissed in its entirety. The district court obliged, and Vestar now appeals. We have jurisdiction over this final judgment pursuant to 28 U.S.C. § 1291.

## III. Analysis

### A. Standard of Review

This court reviews de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir.1999). We can affirm the district court's dismissal for failure to state a claim on any basis fairly supported by the record. *Id.* The substantive law of California applies in this removed diversity action: *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir.1996). Specifically:

When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.

*Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996) (internal quotations and citations omitted).

### B. Enforceability of Agreements to Negotiate

General Dynamics contends on appeal that the judgment may be upheld on an alternate ground that was also argued before the district court: that the agreement to negotiate is unenforceable under California law. We note the possibility that agreements to negotiate may be unenforceable as a matter of law in California. *See, e.g., Beck v. Am. Health Group Int'l, Inc.*, 211 Cal.App.3d 1555, 1562, 260 Cal. Rptr. 237, 242 (1989); *Carter v. Milestone*, 170 Cal.App.2d 189, 194, 338 P.2d 569, 573

(1959); *Smissaert v. Chiodo*, 163 Cal. App.2d 827, 831, 330 P.2d 98, 101 (1958); *Forgeron Inc. v. Hansen*, 149 Cal.App.2d 352, 360, 308 P.2d 406, 412 (1957); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 291 (9th Cir.1997). Significantly, all of these cases involved attempts to enforce the underlying substantive contract, and do not directly address whether an agreement to negotiate is unenforceable in its own right.

However, certain language from these cases, when taken out of context, also can be read to suggest that an agreement to negotiate in itself may not be enforceable. *See, e.g., Carter*, 170 Cal.App.2d at 189, 338 P.2d 569 ("It is, of course, elementary that a writing which is intended by the parties to be a mere memorandum of intention to negotiate a contract and which does not purport to state the essentials of a proposed agreement is unenforceable."); *Beck*, 211 Cal.App.3d at 1562, 260 Cal. Rptr. 237 ("Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid, subsisting agreement"). Furthermore, no California court has affirmatively held that agreements to negotiate *are* enforceable, even for reliance damages. *But cf. Racine & Laramie, Ltd., Inc. v. California Dep't of Parks & Rec.*, 11 Cal.App.4th 1026, 1033, 14 Cal.Rptr.2d 335, 340–41 (1992) ("The fact that parties commence negotiations looking to a contract, or to the amendment of an existing contract, does not by itself impose any duty on either party not to be unreasonable or not to break off negotiations, for any reason or no reason. During the course of negotiations things may be done which do then impose a duty of continued bargaining only in good faith.... For instance .... in anticipation of an agreement the parties may, by letter of intent or otherwise, agree that they will bargain in good faith for the purpose of reaching an agreement."). In light of the unsettled nature of California law on this point, we fortunately are able to resolve this case on the alternate ground specified by the district court.

## C. Speculative Damages

■ The California Civil Code, at section 3000, provides: "For the breach of an obligation arising from contract, the measure of damages ... is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." The California Civil Code further provides, at section 3301, that "DAMAGES MUST BE CERTAIN. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." (capitalization in original). It has long been settled in California that "the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged." *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943) (in bank); *see also Hacker Pipe & Supply Co. v. Chapman Valve Mfg. Co.*, 17 Cal.App.2d 265, 61 P.2d 944, 946 (1936) (requiring proof of "reasonable probability" that claimed lost profits would have been earned but for defendant's breach of existing exclusive-territory contract).

Very recently, the California Court of Appeals reversed as "pure speculation" a jury's award of damages for breach of an agreement to negotiate a loan modification. *See Auerbach v. Great Western Bank*, 74 Cal.App.4th 1172, 1191, 88 Cal.Rptr.2d 718, 732 (1999). The court instructed that such damages "must be predicated on the outcome that would have been reached had the defendant been negotiating in good faith." *Id.* Although stating that the plaintiffs had failed to produce sufficient evidence to quantify that amount, the court's reasoning suggests that such proof would

be impossible as a practical matter in most cases. *Id.* (suggesting that the outcome of a good-faith bargaining session cannot reasonably be presumed); *cf. Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 279 (7th Cir.1996) (observing, in dictum, the difficulty of proving damages for breach of an agreement to negotiate).

■ The parties argue extensively about whether a per se rule is warranted barring the award of expectation damages (i.e. lost profits) for the breach of an agreement to negotiate. However, we need not reach this issue. In this case the damages were too speculative to satisfy California's longstanding reasonable certainty requirement.[3] The only damages Vestar seeks are the future profits that it hoped to earn from the shopping center it had planned to build on the parcel it was attempting to buy. There is no way to evaluate, other than through speculation, the profits that it might have made. The LOU did not establish terms for the sale, but rather only a starting point from which negotiations would continue. The breach alleged was simply General Dynamics' failure to negotiate.

Vestar argues that section 3300 gives it the opportunity to prove "all the detriment proximately caused" by breach of contract, without excluding agreements to negotiate

or expectation damages. This is true. But Vestar fails to address the very next section, 3301, and California case law that require that damages not be speculative or, conversely, that they be proved to a reasonable certainty. On these facts, Vestar could satisfy this standard only with respect to reliance damages: time spent, expenses incurred, opportunities foregone, or perhaps harm to its reputation. But Vestar has expressly disavowed seeking that type of damages and instead seeks only lost profits. In this case, however, satisfactory proof of such damages is impossible. The LOU does not set terms. It is not even binding (except as to the duty to negotiate).[4] There is no way to know what the terms of the eventual sale would have been-or even if a deal would have been reached. Accordingly, on these facts, assessing lost profits by the hypothetical terms of a never-formed deal would require impermissible speculation.[5] *See Auerbach,* 88 Cal.Rptr.2d at 732.

### IV. Conclusion

For the reasons expressed above, the district court's dismissal of Vestar's First Amended Complaint is AFFIRMED.

---

**3.** On these facts we need not preclude the availability of expectation damages in other situations where they might be appropriate for breach of a preliminary contract. *See, e.g.,* E. Allan Farnsworth, *Precontractual Liability and Preliminary Agreements: Fair Dealing and Failed Negotiations,* 87 Colum. L.Rev. 217, 249–52 (1987).

**4.** At four locations in the LOU the lack of commitment to the ultimate sale is apparent. Most significant is the sentence immediately following the agreement to negotiate, which states that the parties have no further obligation if a deal is not reached during the negotiation period. Similarly indicative is the last sentence of paragraph 6: "If Purchaser

determines in its sole and absolute discretion ... that the subject property is not suitable for its purposes, Purchaser may elect to terminate its obligations to purchase the property, in which event all earnest money, plus interest thereon, shall be returned to Purchaser." Additionally, paragraph 8 provides for the termination of the agreement, and paragraph 11 envisions the possibility that the sale will not be completed.

**5.** It is the absence of terms establishing a starting point for calculating lost profits that fatally distinguishes Vestar's sought damages from lost profits that are sometimes calculated using the terms of a final contract. *Cf. Hacker Pipe,* 61 P.2d at 946.