GOULD, J.,
dissenting:
I respectfully dissent. The district court held a trial that occupied nine days. The district court made detailed factual findings that illuminate the grounds for its decision that the Lins had not materially breached the purchase and sale agreement. Those factual findings are not challenged on appeal and thus are conceded as true. The majority rests its opinion primarily on the premise, I think questionable, that California law requires us invariably to view any failure to be in a position to tender clear title on the closing date as per se a material breach.[1] Hence, the majority reasons, the granting of a temporary easement to Pacific Gas & Electric Company (PG & E) for overhead power lines constituted a material breach of the purchase and sale agreement. The majority relies on California law for the principle that there is an implied condition in every contract for sale of real property that the seller will convey title unencumbered and without defect, and that the failure to tender marketable title at the time a contract matures is a material breach granting the purchaser the right to rescind. See, e.g., Crim v. Umbsen, 155 Cal. 697, 103 P. 178, 180 (1909).
In a case such as this, we are bound to apply state law, which requires us to make our best estimate of how the California Supreme Court would rule on the issue if tendered to it. See Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir.2001). Here, in light of the con *54 sistent statements in the California cases on the importance of tendering clear title, I concur in the majority’s conclusion that at least the temporary power line easement, and perhaps also the building of the six utility vaults without consent or consultation was a breach. Nonetheless, I believe that in the unusual circumstances of this case, the California Supreme Court would view the power line and utility vault easements as at most partial breach. Largely for reasons supported by the district court’s extensive and unchallenged factual findings, I would hold that only a partial breach occurred, not one permitting Toll Brothers to rescind the contract.
Here are some of the salient points that impact my analysis. First, the power easement was temporary, and, although it was of uncertain and unspecified duration and had to be removed by PG & E, it is also true that the local governing authority, the city, would not allow above ground power lines to remain. Given the temporary nature of these lines, I must view any breach by their introduction on the land as a de minimis problem that surely would have been worked out before Toll Brothers had to do any development work or construction on the project.
Second, although California law may compel us to conclude there was a breach by inability to tender clear title, I do not accept the idea that all of the circumstances detailed by the district court in its findings after trial are wholly irrelevant to whether the breach was a partial breach or a material breach. There are California cases, e.g. Fristad v. Thompson, 129 Cal. App.2d 132, 276 P.2d 116, 118 (1954), suggesting that a failure to deliver clear title warrants rescission, but I see nothing from the California Supreme Court stating that that must invariably be the conclusion. Instead, I take the position that circumstances such as Toll Brothers ceasing work on development efforts regarding SubArea 3 before the planned closing date, its failure to cooperate in avoiding problems preventing closing, and its motivation to avoid proceeding during an economic downturn can properly be considered in assessing whether the breach was partial or material. I predict that the California Supreme Court would not view this as a material breach. I am not prepared to rest, so heavily in substance, see supra note 1, on the notion that the California Supreme Court would make the transfer of clear title a per se prerequisite to avoid a material breach.
Third, much the same analysis applies to the utility vault issue. Again, title was encumbered by the vaults and attendant easements, but I’m disinclined to view that as a material breach. There was clear testimony that the vaults could be moved at a cost in the range of $300,000-500,000, and so I don’t see why, even if damages are uncertain, a district court could not make a finding on partial breach damages and deduct that from the obligations of Toll Brothers. In the total scheme of the contract, the placement of the utility vaults did not constitute material breach, and the evidence showed that a partial breach was compensable.
Fourth, while some California authority suggests that motive is irrelevant, see, e.g., Crim, 103 P. at 180, and I would agree it is irrelevant to determining if there was a breach or inevitable breach on closing, I think motive can permissibly be considered in assessing whether that breach was material. Under the Restatement (Second) of Contracts, the key factors are (1) the extent to which the injured party will be deprived of the benefit reasonably expected; (2) the extent to which the injured party can be adequately compensated for deprivation of benefit; (3) the extent to which the party failing to perform or to *55 offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (5) the extent to which the behavior of the breaching party comports with standards of good faith and fair dealing. Restatement (Second) of Contracts § 241 (1981). Here, those factors in my assessment tend to favor the Lins rather than Toll Brothers. And I see nothing in California law indicating that this influential Restatement principle of contract law would not be followed by the California Supreme Court. That the breach by the Lins in delivering clear title does not seem motivated by any bad faith or errant intentions to me counsels for viewing the breach as not material in context.
Another factor that might be argued to favor Toll Brothers is whether the encumbrance deprives it of what it expected to buy; however, given the temporary nature of the easement, and given that Toll Brothers had suspended development, there is no practical impact of deprivation. Toll Brothers reasonably could have expected the temporary easement to have been removed before it was time for it to start work on construction or antecedent planning. If the temporary easement caused some delay, in my view it is no insurmountable obstacle for experts to give testimony and for the district court to make a finding on the damages from the delay. Conversely, as the majority sees this case, the Lins suffer a major forfeiture over what seems a hypertechnical breach. Also, it was likely that the Lins could cure the breach because of the temporary nature of the easement.
The crux of material breach analysis is this: Toll Brothers was not deprived of any significant part of its bargain as a result of the Lins’ breach, in light of Toll Brothers’ own plans, a temporary delay on clear title caused it no harm. At the same time, the Lins did not act in bad faith. A determination of partial breach at most, as made by the district court, is correct.
Finally, there are pragmatic grounds favoring the district court’s approach. This was a large development contract that placed certain obligations on each party, and that called for cooperation. I fear that the majority’s approach will only lead to gamesmanship and less than cooperative behavior between landowner and developer, between a master developer and a developer of component parts, and that aggressive jockeying for position without regard to cooperation will ultimately impose higher prices on consumers who buy homes in the development.
For the above reasons, I would characterize the failings of the Lins as breaches but not as material breaches. Hence I respectfully dissent.

. The majority disclaims reliance on this premise and mentions other circumstances, such as the delay from scheduled closing to declaration of breach, to support its conclusion. However, I believe the majority comes close to this premise because the other circumstances cited do not significantly impact the analysis.