**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROY PAYAN; PORTIA MASON; NATIONAL FEDERATION OF THE BLIND, INC.; NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC.,

*Plaintiffs - Appellants*,

v.

LOS ANGELES COMMUNITY COLLEGE DISTRICT,

*Defendant - Appellee.*

No. 24-1809

D.C. No.
2:17-cv-01697-
SVW-SK

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted November 18, 2025
Pasadena, California

Filed March 11, 2026

Before: Jay S. Bybee, Kenneth K. Lee, and Ana de Alba,
Circuit Judges.

Opinion by Judge de Alba;
Partial Dissent by Judge Lee

# SUMMARY[*]

## Americans with Disabilities Act / Damages

Reversing and vacating the district court's final judgment after retrial on remand in a disability discrimination action under Title II of the Americans with Disabilities Act ("ADA") against Los Angeles Community College District ("LACCD"), the panel held that the district court abused its discretion in granting remittitur of damages.

Roy Payan, Portia Mason, National Federal of the Blind, Inc., and National Federation of the Blind of California, Inc., alleged discrimination in Payan's and Mason's treatment as students at LACCD. The jury found LACCD liable on fourteen factual allegations, and it found that LACCD had intentionally violated Title II on nine of them. Based on LACCD's intentional conduct, the jury awarded damages to Payan and Mason. The district court granted LACCD's motion for remittitur, reducing the damages from $218,500 to $1,650 for Payan and from $24,000 to $0 for Mason. The district court also awarded injunctive relief against LACCD.

The panel concluded that LACCD did not forfeit the argument that emotional distress damages were not available. The panel held that in light of *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) (holding that emotional distress damages are not recoverable under antidiscrimination laws enacted pursuant to Congress' Spending Clause power), emotional distress damages are not available under Title II of the ADA. The panel explained

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that, while Title II is a non-Spending Clause antidiscrimination law, it explicitly defines its rights and remedies as those of the Rehabilitation Act, which was enacted pursuant to the Spending Clause. Agreeing with the Eleventh Circuit, the panel nonetheless held that the district court erred in failing to consider whether Payan and Mason were awarded other appropriate forms of relief, such as compensatory damages for loss of educational opportunities. The panel concluded that the jury's award was consistent with the evidence presented at trial and the district court's instructions regarding damages. The panel remanded for further proceedings consistent with this opinion and a corresponding memorandum disposition, with instructions to reinstate the jury's damages award of $218,500 to Payan and $24,000 to Mason.

Dissenting in part, Judge Lee agreed with the majority that Payan and Mason could not recover emotional distress damages under Title II of the ADA but could still seek other pecuniary damages for opportunities lost after suffering unlawful discrimination. Judge Lee disagreed, however, with the majority's conclusion that Payan and Mason offered sufficient evidence to prove that they were entitled to damages for lost educational opportunities.

## COUNSEL

Jessica P. Weber (argued), Monica R. Basche, Kevin D. Docherty, and Erin E. O'Neill, Brown Goldstein & Levy LLP, Baltimore, Maryland; Patricia Barbosa, Barbosa Group, Huntington Beach, California; for Plaintiffs-Appellants.

David A. Urban (argued), Morgan J. Johnson, Mark H. Meyerhoff, and Richard D. Seitz, Liebert Cassidy Whitmore, Los Angeles, California, for Defendant-Appellee.

Elizabeth B. Wydra, Brianne J. Gorod, and Smita Ghosh, Constitutional Accountability Center, Washington, D.C.; for Amicus Curiae Constitutional Accountability Center.

Amy F. Robertson, Fox & Robertson PC, Denver, Colorado; Andrew Rozynski, Eisenberg & Baum LLP, New York, New York; Claudia Center, Maria M. Uzeta, Disability Rights Education and Defense Fund, Berkeley, California; for Amici Curiae Disability Rights Education and Defense Fund and Sixteen Other Organizations.

# OPINION

DE ALBA, Circuit Judge:

Roy Payan, Portia Mason, National Federation of the Blind, Inc., and National Federation of the Blind of California, Inc.,[1] appeal the district court's final judgment and permanent injunction after retrial on remand from this Court in appellants' disability discrimination action under Title II of the Americans with Disabilities Act ("ADA") against Los Angeles Community College District ("LACCD"). Because the district court abused its discretion in granting remittitur, we reverse, vacate, and remand with instructions to reinstate the jury's damages award.

## I.  Background

Appellants Roy Payan and Portia Mason are two blind individuals who enrolled as students in Los Angeles City College ("LACC"), a campus of LACCD, in 2015. Payan and Mason both registered as students with disabilities with LACC's Office of Special Services and were approved for accommodations, set to start in the Spring 2016 semester. Payan's accommodations included tape-recorded lectures, preferential seating, and access to electronic text materials. Mason's accommodations included recorded lectures, preferential seating, access to electronic text materials, and test-taking accommodations. Payan and Mason also both

---

[1] We refer to Payan, Mason, National Federation of the Blind, Inc., and National Federation of the Blind of California, Inc. as "Plaintiffs." Although the National Federation of the Blind, Inc. and the National Federation of the Blind of California, Inc. are also appellants in this case, in keeping with the scope of the issues on appeal—the remittitur of the damages awarded to Payan and Mason—this opinion uses "Appellants" to refer solely to Payan and Mason.

use Jobs Access With Speech ("JAWS") screen-reading software, which reads electronic text to them.

## A. First Trial and Appeal

Despite their approved accommodations, Payan and Mason encountered several issues accessing the materials needed for their studies, and in March 2017, the plaintiffs sued LACCD under Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act. After the district court determined LACCD's liability, it held a jury trial in June 2019 to decide the question of whether LACCD was deliberately indifferent in violating the rights of Payan and Mason, thereby entitling the plaintiffs to damages. The jury awarded $40,000 in damages to Payan and $0 to Mason. Following the jury trial, the district court also issued a permanent injunction.

All parties appealed the district court's 2019 judgment. In August 2021, this Court vacated the district court's judgment in part and remanded the case for a new trial on the plaintiffs' claims. *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 740 (9th Cir. 2021) [hereinafter *Payan I*]; *Payan v. Los Angeles Cmty. Coll. Dist.*, Nos. 19-56111, 19-56146, 2021 WL 3743307 (9th Cir. Aug. 24, 2021). This Court instructed the district court to reconsider the plaintiffs' individual claims on remand under either a disparate impact or a failure-to-accommodate framework and to permit the plaintiffs to introduce evidence to support these claims under either theory. *Payan I*, 11 F.4th at 740.

## B. Second Trial

On remand, the district court specified that the plaintiffs could try their claims under one of three theories of potential liability under Title II of the ADA: disparate impact,

reasonable accommodation, or disparate treatment. During the second trial, Payan and Mason testified as to their many experiences encountering accessibility issues as a result of LACCD's actions and inactions. Payan testified that he could not keep up with his Math 124A course because he only received the necessary chapters of his textbook *after* they were discussed in class. He also testified that he could not use the classroom management software used for his math classes, MyMathLab, because it was inaccessible. While other students could complete homework assigned through MyMathLab at their discretion, Payan had to sit with a tutor at the Office of Special Services to complete his math assignments. Payan also testified that he was limited to two one-hour tutoring sessions per week, which meant that he frequently could not complete all his math homework for the week. Similarly, Payan was unable to access the online learning platform, Etudes, for his psychology course, preventing him from participating in online class discussions.

The students also encountered issues with other inaccessible resources. Payan was not provided with the accessible textbooks, handouts, and PowerPoint presentations from class lectures that he required. Both Payan and Mason were unable to use the LACC library resources because the databases were inaccessible and the computers lacked functioning screen-reading software. Additionally, Payan testified that the LACC and LACCD websites were inaccessible, making it difficult for him to register for courses, apply for financial aid, or stay abreast of the goings-on of campus.

Moreover, the students testified that LACCD failed to honor their approved accommodations. First, LACCD only provided Payan and Mason with their accommodation letters

in an inaccessible print format, preventing them from having an effective memorialization of their approved accommodations. Payan and Mason also reported repeated issues securing test-taking accommodations. Payan testified that he was not always guaranteed a notetaker for his classes, despite his approved accommodation. He also testified that on at least one occasion, a professor did not allow him to record class.

Lastly, Payan testified about his experience being steered away from taking certain courses because of his disability. He testified that after a couple of attempts to take Math 125, a single-semester class, a math professor prompted him to take Math 124A and 124B in sequence, which comprised the same material as Math 125 but would require two semesters to complete.

On retrial, the jury found LACCD liable on fourteen of the nineteen factual allegations. Moreover, the jury found that LACCD had intentionally violated Title II of the ADA on nine of the factual allegations. These include the accessibility issues pertaining to the websites, library resources, classroom management software programs, textbooks, accommodation letters, testing accommodations, and the refusal to permit Payan to attend the math class.

Finding that LACCD committed the requisite intentional conduct to render damages available, *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) (holding that compensatory damages are available under Title II of the ADA with a showing of discriminatory intent); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001) (clarifying that, to recover damages under the ADA, plaintiffs must establish deliberate indifference to make a showing of discriminatory intent), the jury determined the

amount of damages LACCD owed Payan and Mason. The district court's jury instructions on damages stated that the jury could award damages to "reasonably and fairly" compensate the plaintiff for "any injury" they found the defendant's violations of the ADA caused. The court also noted that the jury could "consider the testimony of the plaintiffs regarding the expenses they incurred if [they] found that those expenses were the result of a violation of the ADA." Accordingly, the jury awarded "$218,500 + attorney's fees" to Payan and "24,000 + attorney's fees" to Mason.

## C. Post-Trial Hearings and Orders

In July 2023, LACCD filed a motion for remittitur, which the district court granted the following year. The district court reduced the damages to $1,650 for Payan and $0 for Mason, finding that the record only supported an award of out-of-pocket expenses. The district court found that the "figures [were] not supported by the record and [did] not fall within the definition of 'expenses' that the Court noted in its jury instruction." It reasoned that the awarded damages "could only be attributed to one of two impermissible sources: emotional damages or lost educational opportunities."

The district court informed its remittitur order by the parties' pre-trial back-and-forth on the availability of emotional distress damages under Title II of the ADA after the Supreme Court's ruling in *Cummings v. Premier Rehab Keller, P.L.L.C.*, which held that emotional distress damages are not recoverable under antidiscrimination laws enacted under Congress' Spending Clause power. 596 U.S. 212, 230 (2022). Citing *Cummings*, LACCD objected in August 2022 to proposed jury instructions making emotional distress

damages available. LACCD raised the issue again in the pretrial conference hearings in May 2023, after which the district court requested briefing on the topic from both parties. In a subsequent pretrial conference, the district court announced that it was limiting the scope of available damages because Title II does not permit emotional distress damages. The district court memorialized its ruling in writing the following day, holding that the plaintiffs could not pursue emotional distress damages or damages for lost employment opportunities.

After the second trial, the district court set subsequent hearings on the issue of how to structure the injunctive relief. The court heard testimony from LACCD witnesses and the plaintiffs' experts. A key issue that arose during the post-trial hearings was how LACCD's programs and procedures had changed since 2015–2018, the time period at issue in the case. During these hearings, LACCD provided evidence that it had made significant changes to its websites, existing software programs, and its process for procuring new software programs. Accounting for these changes, the district court determined that the issues of liability warranting injunctive relief were those pertaining to the inaccessible library resources, school websites, and accommodation forms.

Payan and Mason timely appealed the district court's grant of remittitur and injunctive order.

## II. Jurisdiction and Standards of Review

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review district court orders on motions for a new trial and remittitur, including the remitted amount of damages set

by the district court, for abuse of discretion.  *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1063 (9th Cir. 2022); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014).  The factual findings underlying the district court's decision must be affirmed unless they are "illogical, implausible or without support in inferences that may be drawn from the record."  *Unicolors, Inc.*, 52 F.4th at 1063 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).  "We review the district court's interpretation of the relevant disability discrimination laws de novo."  *Payan I*, 11 F.4th at 734 (citing *Molski v. Foley Ests. Vineyard & Winery, LLC*, 531 F.3d 1043, 1046 (9th Cir. 2008)); *see Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

## III.  Discussion

Payan and Mason challenge the district court's grant of remittitur and seek reinstatement of the jury's damages award.  They argue the district court erred in three distinct ways.  First, they argue the district court erred by allowing LACCD to raise a forfeited argument against emotional distress damages.  Second, they argue the district court erroneously applied Supreme Court precedent in barring plaintiffs from recovering emotional distress damages under Title II of the ADA.  Third, they alternatively argue that even if emotional distress damages are unavailable, the district court still erred in reducing the plaintiffs' damages to out-of-pocket expenses despite evidence that the jury could have awarded compensatory damages for the recoverable harm of lost educational opportunities.

Because we find the emotional distress damages issue was not forfeited, [2] we must consider the scope of compensatory relief available under Title II of the ADA in light of the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.* In *Cummings,* the Court held that emotional distress damages are not recoverable under antidiscrimination laws enacted pursuant to Congress' Spending Clause power. 596 U.S. at 230. While Title II of the ADA is a non-Spending Clause antidiscrimination law, it explicitly defines its rights and remedies as those of the Rehabilitation Act, which was enacted pursuant to the Spending Clause. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2). Applying *Cummings*, the district court in this case concluded that emotional distress damages are therefore also not available under Title II of the ADA. We agree; but we also hold that the district court erred in failing to consider whether Payan and Mason were awarded other appropriate forms of relief.

---

[2] Payan and Mason specifically argue that LACCD forfeited the argument against emotional distress damages by not raising it at any point during the previous trial or appeal. *See Jimenez v. Franklin*, 680 F.3d 1096, 1099–1100 (9th Cir. 2012) ("We need not and do not consider a new contention that could have been but was not raised on the prior appeal.") (internal quotation marks and citation omitted). LACCD, however, was not foreclosed from arguing on remand that emotional distress damages are unavailable because this specific issue was not considered, nor decided by implication, in the previous dispositions. *See United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014) ("For the [law-of-the-case] doctrine to apply, the issue in question must have been decided explicitly or by *necessary implication* in the previous disposition.") (internal quotation marks and citation omitted) (emphasis in original). Therefore, LACCD was permitted to challenge the availability of emotional distress damages in the second trial.

## A. Emotional Distress Damages

In *Cummings*, the Supreme Court addressed the question of whether emotional distress damages were recoverable under anti-discrimination laws enacted pursuant to Congress' Spending Clause power. 596 U.S. at 229–30.[3] Directly at issue in the case was whether emotional distress damages were available under the Affordable Care Act and, as relevant here, the Rehabilitation Act. *Id.* at 218. Because the Rehabilitation Act "expressly incorporates the rights and remedies provided under Title VI," the Court examined the scope of remedies available under Title VI to determine whether emotional distress damages were recoverable under the Rehabilitation Act. *Id.* To do so, the Court applied a contract-law analogy whereby "[a] particular remedy is thus 'appropriate relief' in a private Spending Clause action 'only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature.'" *Id.* at 219–20 (quoting *Barnes v. Gorman*, 536 U.S. 181, 187 (2002) (emphasis in original)). Critically, courts may presume that a funding recipient is aware that it could be subject "to the usual contract remedies in private suits." *Id.* at 221. Following this analogy, the *Cummings* Court concluded that emotional distress damages are not recoverable under the Rehabilitation Act because "emotional distress is generally not compensable" in contract law. *Id.* at 221–22.

_____

[3] "Pursuant to its authority to 'fix the terms on which it shall disburse federal money,' Congress has enacted four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds[:] Title VI of the Civil Rights Act of 1964[,] . . . . Title IX of the Education Amendments of 1972[,] . . . the Rehabilitation Act[,] [and] . . . . the Affordable Care Act." *Cummings*, 596 U.S. at 217–18 (cleaned up and internal citations omitted).

Consistent with the approach articulated in *Cummings*, we hold that emotional distress damages are not available under Title II of the ADA, as the remedies available under Title II of the ADA are defined by the statutory text's reference to the Rehabilitation Act. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2). Specifically, the law states that "the 'remedies, procedures, and rights' that Title II 'provides to any person alleging discrimination on the basis of disability in violation of section 12132'" are "the 'remedies, procedures, and rights set forth in' the Rehabilitation Act." *A.W. by & Through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1314 (11th Cir. 2024) (quoting 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2)). The Rehabilitation Act, in turn, establishes that its "remedies, procedures and rights" are those "set forth in title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a(a)(2). Following the chain of incorporation articulated in the statutes, the scope of remedies available under Title II of the ADA is ultimately determined by Title VI's remedial scheme.

Payan and Mason contend, however, that *Cummings* does not apply here because the ADA was enacted pursuant to Congress' Fourteenth Amendment and Commerce Clause powers, and not its Spending Clause power. But this argument was already considered and rejected by the Supreme Court in *Barnes v. Gorman*. 536 U.S. 181 (2002). In *Barnes*, the Supreme Court held that punitive damages were not available under Title VI because "punitive damages . . . are generally not available for breach of contract." *Id.* at 187. The Court then also held that, because Title II of the ADA incorporated the rights and remedies of Title VI vis-à-vis the Rehabilitation Act, it followed that punitive damages could also not be awarded in private suits brought under § 202 of the ADA or § 504 of the Rehabilitation Act. *Id.* at

189. The Supreme Court specifically stated that "[t]he ADA could not be clearer that the 'remedies, procedures, and rights . . . are the same as the 'remedies, procedures, and rights set forth in'. . . the Rehabilitation Act . . . . These explicit provisions make discussion of the ADA's status as a 'non Spending Clause' tort statute quite irrelevant." *Id.* at 190 n.3. (internal citations omitted).

Taking *Cummings* and *Barnes* together, we read the text of Title II of the ADA as making its remedies coextensive with those of the Rehabilitation Act and Title VI of the Civil Rights Act. Because emotional distress damages are unavailable under those causes of action, we likewise hold that such damages are unavailable under Title II of the ADA. Therefore, the district court correctly barred Payan and Mason from recovering emotional distress damages.

## B. Damages for Lost Educational Opportunities

Payan and Mason alternatively argue that the jury's damages award rightly compensated them for their loss of educational opportunities and that the record and the district court's instructions support such an award. We agree.

While we review district court orders on remittitur for abuse of discretion, *Unicolors, Inc.*, 52 F.4th at 1063, we must also provide substantial deference to a jury's finding of the appropriate amount of damages, *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996); *United States v. CB & I Constructors, Inc.*, 685 F.3d 827, 839 (9th Cir. 2012). "We must uphold the jury's award '[u]nless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork.'" *CB & I Constructors, Inc.*, 685 F.3d at 839 (quoting *Harper v. City of Los Angeles,* 533 F.3d 1010, 1028 (9th Cir. 2008)).

Several courts post-*Cummings* have found that plaintiffs may still seek compensatory damages for opportunities lost as a result of a violation of their rights under federal antidiscrimination statutes.  In fact, one of our sister circuits has found that, while emotional distress damages are not recoverable under Title II of the ADA post-*Cummings*, plaintiffs may still seek "compensation for lost educational benefits" under Title II.  *A.W. by & Through J.W.*, 110 F.4th at 1315–16.  We agree that plaintiffs may seek compensatory damages for lost educational opportunities under Title II of the ADA.  *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 66 (1992) ("[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.") (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).  We therefore find the district court erred in barring Appellants from seeking damages for lost educational opportunities.

We also find that the jury's award was consistent with the evidence presented at trial and the district court's instructions regarding damages.  During trial, Appellants presented the jury with evidence that they lost opportunities to meaningfully learn class material, engage in classroom discussions, and explore their educational interests as a result of LACCD's violations of the ADA.  Such testimony included Payan recounting that he was deprived of "the opportunity to participate at the same level of participation as the rest of the students" and that he was unable to participate in aspects of his math and psychology courses because they used inaccessible software programs.

Moreover, the general instruction provided to the jury regarding damages could reasonably have been understood as allowing the jury to compensate Appellants for lost

educational opportunities.  While LACCD contends that the jury could not have awarded damages for lost educational opportunities because it did not receive specific instructions on such damages, the instructions broadly allowed the jury to compensate Payan and Mason for "*any* injury" they found was caused by the LACCD's violations of the ADA.  The district court did not require that the jury make specific findings as to lost opportunities, nor did it require the jury to exclude lost opportunity damages and solely award out-of-pocket expenses.  After instructing the jury to compensate Appellants for any injury they found resulted from LACCD's violations, the district court provided, "You *can* consider the testimony of the plaintiffs regarding the expenses they incurred."  The use of the word "can" reasonably indicated to the jury that it had "permission to" or "may" consider out-of-pocket expenses, *Can (Verb)*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY (2025), but the structure and syntax of the instruction did not clearly require the jury to *only* consider out-of-pocket expenses.

Because Payan and Mason presented evidence of the educational opportunities they lost as a result of LACCD's violations and because of the general nature of the damages instructions, the jury could have reasonably calculated Appellants' damages to be the amount awarded at trial.[4]  *See*

---

[4] We agree with the dissent that plaintiffs seeking lost opportunity damages must prove the amount of damages with reasonable certainty. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 962 (9th Cir. 2001).  However, we disagree in the ultimate conclusion.  Plaintiffs in this case testified they were unable to avail themselves of the educational opportunities they paid for, including being deterred from taking certain classes, being unable to access critical educational materials, and being unable to participate in necessary educational assessments such as homework and online classroom discussions.  Such

*Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086 (9th Cir. 2009). Therefore, the jury's award is not against the clear weight of the evidence. *See Bell v. Williams*, 108 F.4th 809, 819 (9th Cir. 2024); *see also Kode v. Carlson*, 596 F.3d 608, 613 (9th Cir. 2010). By failing to consider whether the jury's award was based on the legally viable basis of lost educational opportunities, the court abused its discretion by granting remittitur. *See Tortu*, 556 F.3d at 1086 (finding district court abused discretion in granting new trial based on "speculative, excessive damages" where its reasoning "reflect[ed] an inaccurate view of the law"); *Kode*, 596 F.3d at 613 ("A finding of abuse of discretion is warranted when the district court's conclusion—although not perhaps the same conclusion that we would reach—was outside of a broad range of permissible conclusions.").

## IV.   Conclusion

We conclude that the district court erroneously remitted damages, and we accordingly **REVERSE, VACATE, and REMAND** for further proceedings consistent with this opinion and corresponding memorandum disposition, with instructions to reinstate the jury's damages award of $218,500 to Payan and $24,000 to Mason.

---

experiences demonstrate how they were effectively unable to access educational opportunities or benefits, meeting the evidentiary threshold to establish the damages to which they are entitled. *Cf. Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (holding that private damages are available under Title IX where harassment is severe enough that it effectively bars access to education opportunities or benefits).

LEE, Circuit Judge, dissenting in part:

The majority correctly concludes that the plaintiffs Roy Payan and Portia Mason may not recover emotional distress damages under Title II of the Americans with Disabilities Act (ADA).  The majority is also right that ADA plaintiffs may still seek other pecuniary damages for opportunities lost after suffering unlawful discrimination.  But I part with my colleagues over their conclusion that the plaintiffs offered sufficient evidence to prove that they suffered lost educational opportunities to the tune of $218,500.  Because the district court fairly reasoned that the jury in reality compensated the plaintiffs for impermissible emotional distress—not lost educational opportunities—I would affirm the district court's grant of remittitur of damages.

Because Title II of the ADA permits a plaintiff to recover only those remedies traditionally available in private contract suits—*i.e.*, economic damages—a plaintiff seeking lost opportunity damages must prove the amount of damages with reasonable certainty.  *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 962 (9th Cir. 2001) (requiring plaintiff to offer the jury a way to determine damages beyond mere speculation).

The plaintiffs simply did not provide any concrete evidence of lost educational opportunities that would justify an award of over $200,000.  The reason is obvious: As the majority explains, the district court—incorrectly—barred them from introducing evidence of lost educational opportunities (more on that error later).  The record is thus devoid of evidence about such damages.

To be sure, Payan and Mason argued they lost some opportunities to learn class material, explore interests, or

enjoy the full benefits of classroom participation. But the evidence presented at trial amounts to little more than the parties' feelings that they failed to receive the full value of their educational program. The record has no testimony about the reasonable value of these opportunities compared to the expected value of the parties' educational programs. Payan testified that he felt "more [like] a spectator than a student," fell behind in classes, lost opportunities to learn about events on campus due to inaccessible websites, and was encouraged to slow the pace of his studies. But such vague testimony provides no basis for a jury to reasonably calculate the value of Payan's losses. The evidence of damages is even skimpier for Mason: She did not point to any evidence of her lost opportunities in the record.

The plaintiffs should have appealed the district court's error in barring evidence of lost educational opportunities. But they did not do so. Instead, they chose to argue that they had presented evidence of such damages, despite the district court's order precluding them from doing so. Perhaps that was a strategic choice because the plaintiffs believed that they would not likely obtain a $200,000-plus verdict based on lost educational opportunities and out-of-pocket expenses. But it is implausible that the jury calculated the value of any lost opportunities to exceed $200,000, given the record.

In sum, the district court correctly found that the jury compensated the plaintiffs for the emotional impacts of discrimination—which are not recoverable under Title II of the ADA. The district court thus did not abuse its discretion in granting the defendant's request for remittitur of damages, and I would uphold the district court's reduced award.

I respectfully dissent.