**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff*,

and

LOWER ELWHA KLALLAM
INDIAN TRIBE; JAMESTOWN
S'KLALLAM TRIBE; PORT
GAMBLE S'KLALLAM TRIBE,
*Petitioners-Appellees*,

v.

LUMMI NATION,
*Respondent-Appellant*,

and

STATE OF WASHINGTON,
*Defendant*.

No. 12-35936

D.C. Nos.
2:11-sp-00002-RSM
2:70-cv-09213-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
April 11, 2014—Seattle, Washington

Filed August 19, 2014

Before: Michael Daly Hawkins, Johnnie B. Rawlinson,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge Rawlinson

## SUMMARY[*]

### Fishing Rights

The panel reversed the district court's summary judgment entered in favor of the Klallam Tribe in a case involving a fishing territory dispute between two sets of Indian Tribes, brought pursuant to the continuing jurisdiction of the 1974 "Boldt Decree" issued by the U.S. District Court for the Western District of Washington.

The panel held that the issue of whether the waters immediately to the west of northern Whidbey Island were part of the Lummi Tribe's usual and accustomed fishing grounds had not yet been determined. The panel held, therefore, that the district court erred in concluding that the issue was controlled by law of the case. The panel remanded to the district court for further proceedings.

Judge Rawlinson dissented because she would hold that the district court properly applied the law of the case doctrine

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

where the fishing rights issue was addressed in the prior opinion *United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000).

---

**COUNSEL**

Sam D. Hough and Stephen Hayes Suagee (argued), Office of General Counsel, Lower Elwha Klallam Tribe, Port Angeles, Washington, for Petitioner-Appellee Lower Elwha Klallam Indian Tribe.

Lauren Patricia Rasmussen (argued), Law Offices of Lauren P. Rasmussen, Seattle, Washington, for Petitioner-Appellee Jamestown S'Klallam Tribe and Port Gamble S'Klallam Tribe.

Hyland Hunt and Pratik A. Shah (argued), Akin Gump Strauss Hauer & Feld LLP, Washington, D.C.; Mary Michelle Neil, Lummi Indian Nation, Office of the Reservation Attorney, Bellingham, Washington; Daniel Alan Raas, Raas, Johnsen & Stuen, P.S., Bellingham, Washington, for Respondent-Appellant.

---

**OPINION**

BEA, Circuit Judge:

This appeal involves a fishing territory dispute between two sets of Indian tribes: the Lower Elwha S'Klallam Tribe, the Jamestown S'Klallam Tribe, and the Port Gamble S'Klallam Tribe ("the Klallam") on the one hand, and the Lummi Nation Tribe ("the Lummi") on the other. The appeal

arises from a proceeding brought by the Klallam pursuant to the continuing jurisdiction of a 1974 decree issued by the U.S. District Court for the Western District of Washington ("Boldt Decree"), and it involves a dispute over the geographic scope of the Lummi's "usual and accustomed fishing grounds" ("U&A"). We must decide if a prior Ninth Circuit opinion has already decided whether the waters immediately to the west of northern Whidbey Island are a part of the Lummi's U&A such that the question is controlled by law of the case. We conclude that the question has not yet been determined and therefore reverse and remand.

## Factual and Procedural Summary

This case arises from a request for determination brought by the Klallam in 2011 to determine the fishing rights of the Lummi under the 1855 Treaty of Point Elliott. The Klallam initiated this subproceeding for a determination of rights, declaratory relief, and to prohibit the Lummi from fishing in certain waters.

On January 22, 1855, the Lummi entered into the Treaty of Point Elliott with the United States. 12 Stat. 927 (1855). This treaty "secured" to the Lummi "[t]he right of taking fish at usual and accustomed grounds and stations." *Id.* at 928. The "usual and accustomed grounds and stations" is abbreviated throughout this opinion as "U&A."

In 1970 the United States, as trustee for all the treaty tribes including the Klallam and the Lummi, filed suit in the Western District of Washington to obtain an interpretation of the Treaty of Point Elliott and an injunction protecting treaty fishing rights from interference by Washington State. Both the Klallam and the Lummi intervened as plaintiffs. In 1974,

Judge Boldt issued extensive findings of fact, conclusions of law, and a permanent injunction. *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974) ("Boldt Decree").

The Boldt Decree defined the Treaty of Point Elliott's reference to "usual and accustomed grounds and stations" as meaning "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters[.]" *Id.* at 332.

The Boldt Decree discussed the Lummi in particular. *Id.* at 360–62. Judge Boldt found that the Lummi fished using reef nets "on Orcas Island, San Juan Island, Lummi Island and Fidalgo Island, and near Point Roberts and Sandy Point." *Id.* at 360. In addition, Judge Boldt found that the Lummi "trolled the waters of the San Juan Islands for various species of salmon." *Id.* Moreover, "[i]n addition to the reef net locations listed above, the [U&A] of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle[.]" *Id.* at 360.

Judge Boldt also reserved the "continuing jurisdiction" to hear future subproceedings regarding "the location of any of a tribe's [U&A] not specifically determined by" the Boldt Decree. *Id.* at 419.

## 1. Subproceeding 89-2

On March 3, 1989, in response to the Lummi's continued fishing of certain disputed waters, the Klallam invoked this

continuing jurisdiction of the Western District of Washington to initiate Subproceeding 89-2. In this Subproceeding, the Klallam filed a request for determination that "the [U&A] of the Lummi Tribe does not include the Strait of Juan de Fuca, Admiralty Inlet and/or the mouth of Hood Canal."

On February 15, 1990, Judge Coyle of the Western District of Washington granted summary judgment to the Klallam. ("Coyle Decision"). Judge Coyle, after examining the Boldt Decree and the evidence on which it was based, found that "the Lummis' [U&A] were not intended to include the Strait of Juan de Fuca. The court is further persuaded that the mouth of the Hood Canal would not be an area which Judge Boldt would have intended to include in the Lummis' [U&A]." Further, Judge Coyle concluded that "Judge Boldt did not intend Admiralty Inlet to be part of the Lummis' [U&A]."

Judge Coyle, however, did not enter final judgment. *United States v. Lummi Indian Tribe*, 235 F.3d 443, 447–48 (9th Cir. 2000). The Lummi filed a cross-request for determination, and both parties continued to litigate. *Id.* The Lummi's cross-request sought determination that:

> the [U&A] of the Lummi Indian tribe include the waters of the Strait of Juan de Fuca east from the Hoko River to the mouth of the Puget Sound, *the waters west of Whidbey Island*, Admiralty Inlet, the waters south of Whidbey Island to the present environs of Seattle, and the waters of Hood Canal south from Admiralty Inlet to a line drawn from Termination Point due East across Hood Canal.

(emphasis added).  The Lummi filed a motion to dismiss and a motion for summary judgment; the Klallam filed a cross-motion to dismiss.

On September 4, 1998, Judge Rothstein, to whom the subproceeding had been reassigned, denied the Lummi's motions and granted the Klallam's cross-motion to dismiss. ("Rothstein Decision").  She held that "the court can discern no difference between" the area covered by the Klallam's request for determination before Judge Coyle (*i.e.* the Strait of Juan de Fuca, Hood Canal, and the Admiralty Inlet) and the Lummi's cross-request for determination before her (which included "the waters west of Whidbey Island)." Although "[t]he Lummi's request is worded differently from the [Klallam's] original request[,] . . . [it] covers essentially the same areas."  Judge Rothstein also held that, even though Judge Coyle did not enter final judgment, the Coyle Decision was law of the case.  Therefore, she adopted the Coyle Decision's finding that "Judge Boldt did not intend to include the Strait of Juan de Fuca, Admiralty Inlet or the mouth of the Hood Canal in the Lummi" U&A.    Judge Rothstein accordingly denied the Lummi's cross-request for determination and granted the Klallam's cross-motion to dismiss.

The Lummi appealed Judge Rothstein's order to the Ninth Circuit.  *Lummi Indian Tribe*, 235 F.3d at 445.  The panel held, first, that the Coyle Decision was not final because Judge Coyle never entered final judgment.  *Id.* at 448–49. Because it was not final, the panel continued, the Coyle Decision merged into the Rothstein Decision.  *Id.* at 449. Therefore, the panel concluded, both the Coyle Decision and the Rothstein Decision were before the panel in the appeal. *Id.*

As the panel framed the issue:

> The question before Judge Coyle was whether the Lummi's [U&A], as expressed in Finding of Fact 46 of *Decision I* [*i.e.* of the Boldt Decree]—"the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle"—included the disputed areas [*i.e.* the Strait of Juan de Fuca, Hood Canal, and the Admiralty Inlet]. The phrase used by Judge Boldt is ambiguous because it does not delineate the western boundary of the Lummi's [U&A].

*Id.* The panel analyzed the evidence that was before Judge Boldt and concluded that Judge Boldt had not intended to include either the Strait of Juan de Fuca or the Hood Canal in the Lummi's U&A, because Judge Boldt commonly distinguished between the Puget Sound, where the Lummi fished, and the Strait of Juan de Fuca and Hood Canal, where other tribes fished. *Id.* at 450–52. The panel held that "It is clear that Judge Boldt viewed Puget Sound and the Strait of Juan de Fuca as two distinct regions, with the Strait lying to the west of the Sound." *Id.* at 451–52. The panel also concluded that Judge Boldt did intend for the Admiralty Inlet, *i.e.* "[t]he waters to the west of Whidbey Island, separating that island from the Olympic Peninsula[,]" to be included in the Lummi's U&A, because, "[g]eographically," the Admiralty Inlet

> would likely be a passage through which the Lummi would have traveled from the San Juan Islands in the north to the "present environs of Seattle." If one starts at the

> mouth of the Fraser River (a Lummi [U&A],
> see Findings of Fact 45 & 46) and travels past
> Orcas and San Juan Islands (also Lummi
> [U&A], see Finding of Fact 45), it is natural
> to proceed through Admiralty Inlet to reach
> the "environs of Seattle."

*Id.* at 452 (*quoting* the Boldt Decree, 384 F. Supp. at 360).
The panel thus affirmed in part and reversed in part.  *Id.* at
453.

After *Lummi Indian Tribe* was decided, the Lummi
Natural Resources Commission, a tribal body, interpreted the
decision as including in the Lummi U&A "Haro Strait and
Admiralty Inlet and the waters between the two."  In April,
2009, the Klallam moved for the district court in
Subproceeding 89-2 to hold the Lummi in contempt for
violating the court orders regarding the extent of the Lummi's
U&A.   The Lummi moved to dismiss, arguing that
Subproceeding 89-2 was closed, and the issue should be
addressed in a new subproceeding.  The district court, Judge
Martinez, granted the Lummi's motion to dismiss and denied
the Klallam's motion without prejudice so it could be
renewed as a new subproceeding.

## 2.  Subproceeding 11-02

On November 4, 2011, the Klallam initiated
Subproceeding 11-02 by filing a request for determination
that the Lummi's U&A do not include "the eastern portion of
the Strait of Juan de Fuca or the waters west of Whidbey
Island (excepting Admiralty Inlet)."   In particular, the
Klallam defined the "case area" at dispute as follows:

> Lummi is impermissibly fishing i[n] the marine waters northeasterly of a line running from Trial island near Victoria, British Columbia, to Point Wilson on the westerly opening of Admiralty Inlet, bounded on the east by Admiralty Inlet and Whidbey Island, and bounded on the north by Rosaria Strait, the San Juan Islands, and Haro Strait.

The Klallam then moved for summary judgment.

On October 11, 2012, Judge Martinez granted summary judgment to the Klallam. He concluded that "[t]he law of the case holds that the Lummi U&A does not include the Strait of Juan de Fuca or the waters west of Whidbey Island that were named in the Lummi Cross-request for determination. That issue has been finally determined and may not be re-litigated." The district court came to this conclusion because the Rothstein decision determined that there was no difference between "the Strait of Juan de Fuca, Hood Canal, and the Admiralty Inlet" and a list of locations that included "the waters west of Whidbey Island." The district court also quoted extensively from a report on traditional U&A of Indian tribes, including the Lummi, by Dr. Lane, on which Judge Boldt had relied in making his findings of facts. This report stated that "Lummi fishermen were accustomed, at least in historic times, and probably earlier, to visit fisheries as distant as the Fraser River in the north and Puget Sound in the south." The district court found that this statement would not compel the conclusion that the waters west of northern Whidbey Island should be included in the Lummi U&A because "the Lummi have pointed to no facts before Judge Boldt which would support the conclusion that he intended to include all the marine waters in between."

The Lummi moved for reconsideration on the ground that the district court's decision was overbroad because it interpreted the Lummi's U&A as not including waters off the southern coast of the San Juan Islands. The district court denied the motion, but did clarify that "the Lummi U&A should include nearshore waters immediately to the south of San Juan Island and Lopez Island." The Lummi appealed both the district court's original decision and its denial of their motion for reconsideration.

## Standard of Review

The parties disagree over what standard of review we should apply in analyzing the district court's conclusion that the law of the case holds that the Lummi U&A does not include the waters west of northern Whidbey Island. The Klallam argue that the correct standard of review is abuse of discretion, and that there are only five circumstances under which a district court abuses its discretion in applying the law of the case, none of which applies here. *See Lummi Indian Tribe*, 235 F.3d at 452–53 (holding that application of the doctrine of law of the case is "discretionary" and that a district court abuses its discretion "in applying the law of the case doctrine only if: (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result").

Abuse of discretion, however, is the standard when it is clear that the law of the case doctrine applies. Here, on the other hand, the parties dispute whether the doctrine applies at all, *i.e.* whether the issue has already "been decided explicitly or by necessary implication." *Id.* at 452. This is a question

of law and therefore we review *de novo* this threshold question of whether the issue is controlled by law of the case at all.

## Analysis

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." *Lummi Indian Tribe*, 235 F.3d at 452. "Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Id.* "For the doctrine to apply, the issue in question must have been decided explicitly or by *necessary implication* in the previous disposition." *Id.* (internal quotation marks and brackets omitted) (emphasis added).

In their request for determination here, the Klallam assert that "Subproceeding 89-2 [has] determined that the Lummi's U&A does not include the eastern portion of the Strait of Juan de Fuca or the waters west of Whidbey Island (excepting Admiralty Inlet)." The Klallam state that they "do not seek to relitigate Lummi's [U&A] but, rather, seek to demonstrate that [these] waters . . . have already been found by th[e district c]ourt and the Ninth Circuit Court of Appeals to be outside of Lummi's U&A." The Lummi acknowledge that it is clear law of the case that Judge Boldt did not intend to include the Strait of Juan de Fuca in the Lummi's U&A. The Lummi argue, however, that no prior proceeding has established precisely the eastern boundary of the Strait of Juan de Fuca, and that this eastern boundary is somewhere to the west of the western shores of northern Whidbey Island. The Klallam, on the other hand, argue that the eastern boundary of the Strait of Juan de Fuca is the western shores of northern Whidbey Island.

No court has yet *explicitly* determined the eastern boundary of the Strait of Juan de Fuca. Thus, the question before the panel is, has a prior judicial decision in Subproceeding 89-2 already established, by *necessary implication*, the eastern boundary of the Strait of Juan de Fuca such that future litigation of the question in this case is controlled by law of the case.

The district court found that earlier decisions in Subproceeding 89-2 had already established that the Strait of Juan de Fuca's eastern boundary was the western shores of northern Whidbey Island. In reaching this conclusion, the district court relied on Judge Rothstein's statement in Subproceeding 89-2 that she could "discern no difference" between the geographical area comprising "the Strait of Juan de Fuca, Admiralty Inlet, and the Hood Canal," as the Klallam defined the case area in their request for determination in Subproceeding 89-2, and "the waters of the Strait of Juan de Fuca east from the Hoko River to the mouth of Puget Sound, the waters west of Whidbey Island, Admiralty Inlet, the waters south of Whidbey Island to the present environs of Seattle, and the waters of Hood Canal, south of Admiralty Inlet to a line drawn from termination Point due east across Hood Canal," as the Lummi defined the case area in their cross-request for determination in the same Subproceeding. To the district court, this statement demonstrated that the Rothstein Decision held that "the Strait of Juan de Fuca" and "the waters west of Whidbey Island" were not different regions, but rather the "waters" were included in the "Strait." Moreover, the district court determined that, while it is true that the Ninth Circuit reversed the Rothstein Decision with regard to the Admiralty Inlet, finding that the Inlet was a part of the Lummi's U&A, it affirmed the rest of the Rothstein Decision. Therefore, the

district court held, it is law of the case that the eastern boundary of the Strait of Juan de Fuca is the western shores of northern Whidbey Island.

This reasoning suggests it has already been determined by necessary implication that the waters immediately west of northern Whidbey Island are part of the Strait of Juan de Fuca and hence not a part of the Lummi's U&A. The Rothstein Decision determined that "the Strait of Juan de Fuca, Admiralty Inlet, [and] the mouth of the Hood Canal" and the "waters west of Whidbey Island" were not different regions, but rather the latter was a subset of the former. The Rothstein Decision also determined that the Strait of Juan de Fuca was not included in the Lummi's U&A. *Lummi Indian Tribe* affirmed the second of these findings, namely that the Strait of Juan de Fuca was not included in the Lummi's U&A. 235 F.3d at 450–52. This finding at least suggests that it also affirmed the first finding that the "waters west of Whidbey Island" are a subset of the Strait of Juan de Fuca, and therefore are not included in the Lummi's U&A.

Other language in *Lummi Indian Tribe*, however, contains reasoning that would suggest just the opposite, namely that the waters immediately to the west of Whidbey Island *are* included in the Lummi's U&A. The reason the 2000 Ninth Circuit panel reversed the Rothstein Decision to find that the Admiralty Inlet *was* included in the Lummi's U&A was that the Admiralty Inlet "would likely be a passage through which the Lummi would have traveled" from the Fraser River, south through the San Juan Islands, to the present environs of Seattle. *Id.* at 452. Applying that reasoning here, the "passage through which the Lummi would have traveled" from the San Juan Islands to the Admiralty Inlet would have been the waters directly to the west of Whidbey Island. Thus,

this reasoning suggests that the waters immediately to the west of northern Whidbey Island would be included within the Lummi's U&A.

Both the district court and the Klallam on appeal argue that applying this reasoning here would violate "the oft-quoted principle that transit through an area does not, without more specific evidence of fishing, lead to inclusion of an area in a tribe's U&A." This principle comes from the Boldt Decree, which stated

> Marine waters were also used as thoroughfares for travel by Indians who trolled en route. Such occasional and incidental trolling was not considered to make the marine waters traveled thereon the usual and accustomed fishing grounds of the transiting Indians.

384 F. Supp. at 353 (internal citations omitted). The Ninth Circuit, however, in interpreting the Boldt Decree's language ("the [U&A] of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle," *id.* at 360), concluded that this language meant the Admiralty Inlet was included in the Lummi's U&A, because "it is natural to proceed through Admiralty Inlet to reach the 'environs of Seattle.'" *Lummi Indian Tribe*, 235 F.3d at 452. This suggests that the Ninth Circuit had concluded that the Lummi's use of "the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle" was more than mere "occasional and incidental trolling." If to "proceed through Admiralty Inlet" rendered Admiralty Inlet a part of the Lummi U&A, then to proceed from the

southern portions of the San Juan Islands to Admiralty Inlet would have the same effect: to render the path a part of the Lummi U&A, just like Admiralty Inlet. This implicit conclusion would suggest that the *Lummi Indian Tribe* panel interpreted the Boldt Decree's language to mean that the Lummi had a continuous and unbroken U&A connecting Fraser River to Seattle. This would further suggest that it has already been determined by necessary implication that the waters immediately west of northern Whidbey Island *are* a part of the Lummi's U&A.

Thus, each of *Lummi Indian Tribe*'s two holdings implies a different result. Therefore, we conclude that *Lummi Indian Tribe* is ambiguous regarding whether the waters immediately to the west of northern Whidbey Island are included within the Lummi U&A, and accordingly that this issue has not yet been decided explicitly or by necessary implication.

The law of the case doctrine applies only when the issue was "decided explicitly or by necessary implication in the previous disposition." *Id.* (internal quotation marks and brackets omitted); *see United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008) (holding that "law of the case acts as a bar only when the issue in question was actually considered and decided by the first court"). We hold that no prior decision in this case has yet explicitly or by necessary implication determined whether the waters immediately west of northern Whidbey Island are a part of the Lummi's U&A.

Therefore, the district court erred in concluding that the issue was controlled by law of the case.[1]

## Conclusion

Therefore, we **REVERSE** the district court's grant of the Klallam's motion for summary judgment and **REMAND** to the district court for further proceedings consistent with this opinion.

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that no court has determined whether the "usual and accustomed [fishing] grounds and stations" (U&A) for the Lummi Nation Tribe (Lummi) included the waters west of northern Whidbey Island.

---

[1] We agree with Judge Rawlinson that *Lummi Indian Tribe*, 235 F.3d 443, by affirming Judge Rothstein's decision that the Strait of Juan de Fuca is not within the Lummi U&A, implied that it was also affirming Judge Rothstein's conclusion that the waters west of northern Whidbey Island were not a part of the Lummi U&A. The dissent, however, does not address the reasoning implicit in the panel's reversal of Judge Rothstein's conclusion regarding the Admiralty Inlet. That reasoning implied that the Lummi U&A contains an unbroken swath from Fraser River south to the present environs of Seattle, thereby including at least the waters immediately west of Whidbey Island. Because these two implications point in opposite directions, the Ninth Circuit opinion cannot have "necessar[il]y impli[ed]" one way or the other whether the Lummi U&A contain any waters west of northern Whidbey Island.

In my view, the answer to this question is contained in our prior opinion, *United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000). That case also addressed a challenge to Judge Rothstein's adherence to Judge Coyle's previous determination that neither the Strait of Juan de Fuca, Admiralty Inlet nor the mouth of the Hood Canal were within the Lummi's usual and accustomed fishing areas. *See id.* at 447. Judge Rothstein's adherence to Judge Coyle's decision followed her application of the law of the case doctrine. *See id.*

As the district court noted, Judge Rothstein was quite detailed in her description of the areas sought to be included by the Lummi in its U&A:

> This request [the Lummi Cross-Request for Determination][1] sought a declaration that the Lummi U&A included the waters of the Strait of Juan de Fuca east from the Hoko River to the mouth of Puget Sound, *the waters west of Whidbey Island* to the present environs of Seattle and the waters of Hood Canal. . . . *The Lummi have not asserted that their cross-request covers a different area covered by the Four Tribes' initial request and by Judge Coyle's decision.* Rather, they argue that Judge Coyle's decision is not final and is of no precedential value. The court can discern no difference between the two requests for

---

[1] The Lummi's Cross-Request for Determination sought to include the same areas that competing tribes described as the Four Tribes sought to have excluded in the initial petition before Judge Coyle. *See Lummi*, 235 F.3d at 446–47.

determination, nor have the Lummi convincingly argued that there is a difference. Thus, this order is intended to resolve both requests for determination.

*United States v. Washington*, Nos. CV 70-9213 RSM, 11-SP-02, 2012 WL 4846239 at *6 (W.D. Wash., Oct. 11, 2012) (emphases added).

Judge Rothstein's ruling encompassed the following facts:

1. The Four Tribes filed an initial proceeding seeking to exclude the waters west of Whidbey Island from the Lummi U&A. *See id.* at 2.

2. Judge Coyle granted summary judgment in favor of the Four Tribes, but never reduced his order to judgment. *See id.*

3. The Lummi subsequently filed a "Cross-Request For Determination" seeking to include within its U&A the waters west of Whidbey Island. *See id.*

4. Judge Rothstein viewed the initial proceeding filed by the Four Tribes seeking to exclude the waters west of Whidbey Island and the cross-request for determination filed by the Lummi seeking to include the waters west of Whidbey Island as the one and the same request—to determine if the waters west of Whidbey Island were included in the Lummi U&A. *See id.* at 6.

5. Judge Rothstein interpreted Judge Coyle's decision as law of the case that the disputed areas, including the

waters west of Whidbey Island, were not within the Lummi U&A. *See Lummi*, 235 F.3d at 447.

On appeal of Judge Rothstein's ruling, we reversed only to the extent that her ruling excluded Admiralty Inlet from the Lummi U&A. In doing so, we described Admiralty Inlet as "consist[ing] of the waters to the west of Whidbey Island, separating that island from the Olympic Peninsula. . . ." *Id.* at 452. It stands to reason that any other portion of the waters west of Whidbey Island that were not included in our description remain excluded from the Lummi U&A. In *Lummi*, we had no difficulty "concluding that Judge Rothstein properly applied the law of the case doctrine."

I continue in the belief that our prior conclusion is correct, and that the law of the case doctrine precludes further expansion of the Lummi U&A. I would affirm the district court.