

**FILED**

FEB 29 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

COCHRAN FIRM, P.C., The, an Alabama corporation,

        Plaintiff-counter-defendant - Appellant,

  And

SAMUEL A. CHERRY; et al.,

        Counter-defendants - Appellants,

 v.

COCHRAN FIRM LOS ANGELES LLP, The, a California Limited Liability Partnership,

        Defendant,

  And

RANDY H. MCMURRAY, P.C., a California professional corporation; et al.,

        Defendants-counter-claimants - Appellees,

No. 15-55816

D.C. No. 2:12-CV-05868-PSG-MRW

MEMORANDUM*

---

      *    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

DUNN LAW APC; et al.,

                    Counter-defendants -
Appellees.

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted December 7, 2015
Pasadena, California

Before: PREGERSON, D.W. NELSON, and CALLAHAN, Circuit Judges.

Judges PREGERSION and D.W. NELSON writing:

The Cochran Firm, P.C. (Firm) and counter-defendants Samuel A. Cherry, J. Keith Givens, and Barvie Koplaw appeal the district court's order dissolving the preliminary injunction obtained against Randy H. McMurray, P.C. and Randy H. McMurray (McMurray). We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

1.      The district court did not err in dissolving the preliminary injunction based on the Firm's unclean hands. Though the district court's order never explicitly states a specific finding on bad intent, the court did not ignore this element. Before launching into its analysis of the unclean hands defense, the district court acknowledged that part of its burden as the trier of fact was to assess whether the

2

Firm had acted in bad faith. It quoted *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002)), writing that "[t]o succeed on an unclean hands defense, a trademark defendant 'must show that [the] plaintiff used the trademark to deceive customers' and did so with bad intent," and "'[b]ad intent is the essence of the defense of unclean hands.'" The court later wrote that McMurray had satisfied its burden, thus clearly implying that McMurray had indeed demonstrated that the Firm acted with bad intent. The district court also considered evidence of actual deception of consumers, such as when a former client attempted to obtain a judgment against the Firm. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 834 (9th Cir. 2011).

Nor did the district court ignore the assessment of whether the Firm's misconduct had an "immediate and necessary relation to the equity [it] seeks." *See S. Cal. Darts Ass'n v. Zaffina,* 762 F.3d 921, 932 (9th Cir. 2014) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). Previously, this Court remanded this case to the district court with instructions stating:

> The structure of [the Firm's] business is important in assessing whether [the Firm] has unclean hands. Specifically, [the Firm] may be misusing the trademark to deceive the public into believing it is a single, national firm, when in fact it is a network of separate partnerships. Because the record before us does not provide sufficient information about the relationships both between [the Firm] and the local offices, or between [the Firm] and the

3

public, we remand to the district court to determine whether [the Firm] has unclean hands in its use of the Cochran Firm trademark.

Read as a whole, this instruction implies that the issue of unclean hands is immediately and necessarily related to the equity the Firm seeks. It was not unreasonable for the district court to rely on this Court's instruction as reflecting that the "immediate and necessary relation" element as having already been satisfied, and this reliance was not reversible error.

Finally, the district court did not abuse its discretion in using as an informative guide California's Rules of Professional Conduct's definition of a law firm, or finding expert testimony regarding the definition to be relevant. This definition was merely helpful to the district court and use of it as a guide was not reversible error.

2. Appellants argue that McMurray's own unclean hands bar McMurray from raising an unclean hands defense. The district court, however, did not err in finding otherwise. The court did not abuse its discretion in finding that there was insufficient evidence to support Appellants' argument, and even if there were sufficient evidence, that the Firm has been more culpable than McMurray.

3. Finally, during this appeal, McMurray filed a motion for sanctions against the Firm. The motion for sanctions is denied.

**AFFIRMED.  MOTION FOR SANCTIONS DENIED.**

*Cochran Firm P.C.  v Cochran Firm Los Angeles LLP et al   15-55816*

Callahan, Circuit Judge, dissenting:

The Cochran Firm, P.C. (the Firm) obtained a preliminary injunction against Randy McMurray, a former partner of Johnnie Cochran, Jr., barring him from infringing the Firm's right to the "The Cochran Firm" trademark.  The district court later dissolved the injunction, however, on the ground that the Firm has unclean hands in advertising itself as a "single firm" that is "national" in reach. That McMurray infringed the trademark is no longer at issue.  Rather, this case has lost its way and become mired in the metaphysics of what makes a law firm "single" and "national."

I dissent because The Firm's marketing is not misleading and has little to do with the trademark at stake.  In holding otherwise, the district court misunderstood the unclean hands defense's limited breadth.  The effects of our failure to correct this case's wayward course are alarming.  Multi-office businesses will be surprised to learn that they are misleading the public by advertising themselves as "single" and "national" in stature, and thus may not protect any right they hold to their company's name.  The bench and bar will also be surprised to learn that a judge can federalize one definition of "law firm" in deciding a trademark infringement case.  If the district court does not right its understanding and application of the

1

unclean hands defense, this case may have an interesting future indeed.

## I.

The unclean hands defense has an increasingly limited scope in trademark infringement suits. Although an established defense, it is disfavored, particularly in suits like this one seeking to enjoin activity that is harmful the public. *See Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963) ("In the interests of right and justice the court should not automatically condone the defendant's infractions because the plaintiff is also blameworthy, thereby leaving two wrongs unremedied and increasing the injury to the public."); McCarthy on Trademarks & Unfair Competition § 31:53 (hereinafter McCarthy) ("It is better to remedy one wrong than to leave two wrongs at large."). To prevail on the defense in a trademark infringement action, a defendant must demonstrate by "clear, convincing evidence" that (1) plaintiff's conduct is inequitable and (2) the misconduct relates to the subject matter of plaintiff's trademark infringement claim. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833 (9th Cir. 2011).

For a plaintiff's false advertising to meet the first, "inequitable" requirement, a "defendant must show that plaintiff used the trademark to deceive consumers." *Perfumebay.com Inc., v. eBay Inc.*, 506 F.3d 1165, 1177 (9th Cir. 2007). This demands a showing of "bad intent," which "is the essence of the defense of

2

unclean hands." *Id.*; *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). "[T]he extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, [also] is a highly relevant consideration" in assessing whether the "inequitable" requirement is met. *Republic Molding*, 319 F.2d at 349–50. Thus, even where bad intent is demonstrated, an appreciable number of consumers must also have actually been deceived for the defense to succeed. *TrafficSchool.com*, 653 F.3d at 834 (requiring "evidence of actual deception caused by plaintiffs' advertising"). Indeed, some courts have demanded "clear, convincing evidence of '*egregious*' misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004) (emphasis added); *see also, e.g.*, *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1113–16 (C.D. Cal. 2010) (collecting cases), *aff'd*, 468 Fed. Appx. 688 (9th Cir. 2012). This standard makes sense—the showing required for trademark infringement to continue unchecked due to a plaintiff's advertising must be more stringent than the showing required for that plaintiff to be found liable for a false-advertising counterclaim.

To meet the second requirement, a defendant must show that the plaintiff's "misdeeds . . . have an immediate and necessary relation to the equity that [the plaintiff] seeks in respect of the matter in litigation." *S. Cal. Darts Ass'n v.*

3

*Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014); *see also Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010) (requiring that "the alleged misconduct . . . relate directly to the transaction concerning which the complaint is made"). This requirement generally is met where the trademark sought to be protected is itself misleading. For example, the Supreme Court held that the laxative name "Syrup of Figs" was unprotectable where the product contained no figs or fig juice. *Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 539–40.[1] Where the trademark does not itself make a misleading assertion but is used as part of misleading advertising, the requisite relation is much less likely to be found. "In such cases, almost all courts have narrowly drawn the limits of the scope of the 'subject matter' of the case so as to rule out unclean hands." 6 McCarthy § 31:51.[2] The requisite relation also exists where "a

---

[1]    *See also Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 494 (1942) ("[E]quity will deny relief for infringement of a trademark where the plaintiff is misrepresenting to the public the nature of his product either by the trademark itself or by his label."); *Holzapfel's Compositions Co. v. Rahtjen's Am. Composition Co.*, 183 U.S. 1, at 8 (1901) ("A symbol or label claimed as a trademark, so constituted or worded as to make or contain a distinct assertion which is false, will not be recognized, nor can any right to its exclusive use be maintained."*)*; 6 McCarthy at § 31:50.

[2]    *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) (plaintiff's deceptive marketing of its hamburger meat as "ground steak" did not bar trade dress infringement suit); *Tveter v. AB Turn-O-Matic*, 633 F.2d 831, 839  (9th Cir. 1980) (plaintiff's use of "patent pending" in connection

plaintiff . . . has dirtied his hands in acquiring the right presently asserted." *Seller Agency Council*, 621 F.3d at 986.

In sum, unclean hands rarely forecloses injunctive relief in an otherwise meritorious trademark infringement action. In essence, our case law holds: Where a plaintiff's alleged misconduct involves false advertising, the defense succeeds only if the defendant shows by clear, convincing evidence that (1) the trademark itself makes a false or misleading statement that the plaintiff knows to be misleading and that has actually deceived consumers; or (2) the plaintiff uses the trademark as a central part of egregiously misleading marketing that the plaintiff knows to be misleading and that has actually misled consumers.

## II.

The district court dissolved the injunction against McMurray's infringement of The Cochran Firm trademark because it found that the Firm had dirtied its hands by making two advertising statements: (1) that it is "national" and (2) that its offices are part of a "single" law firm. As explained below, the district court erred.

## A.

The district court failed to make findings regarding two central requirements

---

with the trademark when no patent application was on file did not bar claims for trademark infringement and unfair competition).

of the unclean hands defense. First, the court failed to make findings necessary to establish the "inequitable" requirement. While the court noted that bad intent is an element of the unclean hands defense, it did not find that the Firm acted in bad faith in advertising itself as a single, national law firm. Moreover, the court did not find any actual deception or even acknowledge that such a showing is required.

Second, the district court did not find that the Firm's marketing has an "immediate and necessary relation" to the equity that the Firm seeks—that being to stop McMurray from trading on the Firm's goodwill and deceiving the public into believing that he is still a part of The Cochran Firm. Invoking the "abuse of discretion" standard of review, the majority excuses this absence by finding that our previous decision remanding "for the district court to augment the record and to reconsider [McMurray's] unclean hands argument," somehow, *sub silentio* and without the record deemed required, found the requirement met. *See Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*, 572 F. App'x 491, 493 (9th Cir. 2014). Even assuming that the district court so understood our decision, which it did not indicate, whether "the issue has already been decided explicitly or by necessary implication" is a question of law that is reviewed *de novo*, not for abuse of discretion. *United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014). Our previous memorandum disposition remanding for the district court to augment

6

the record and assess the unclean hands defense did not make any law of the case. *Rodriguez v. Robbins*, 804 F.3d 1060, 1080–81 (9th Cir. 2015) (conclusions made at the preliminary injunction stage are not law of the case if they do not implicate "pure issues of law" or were "made hastily and on less than a full record").

The absence of these findings and the district court's apparent misunderstanding of the applicable legal standard merit a remand. However, because the record and the findings of the district court are "sufficiently comprehensive and pertinent to the issues to provide a basis for decision," *FTC v. Enforma Natural Products, Inc.*, 362 F.3d 1204, 1212 (9th Cir. 2004), I would reach the merits and vacate dissolution of the preliminary injunction.

**B.**

The preliminary injunction should not have been dissolved because McMurray has not demonstrated a likelihood of success on the merits of his unclean hands defense with respect to either of the Firm's allegedly misleading advertising statements. Each advertising statement is addressed in turn below.

**1.**

With respect to the Firm's "single firm" advertising, even if the "immediate and necessary relation" requirement were met, the advertising is not sufficiently

"inequitable" to bar relief.[3]

The record does not support a finding that McMurray can demonstrate by clear, convincing evidence that the Firm's "single firm" branding is misleading, much less egregiously so and undertaken with bad intent. "Reactions of the public [to allegedly misleading advertisements] are typically tested through the use of consumer surveys." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997); *see* 5 McCarthy § 27:55. While "full-blown consumer surveys to prove actual consumer confusion" may not be "required at the preliminary injunction stage," *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 15 (7th Cir. 1992), where a trademark is not itself clearly misleading, courts should demand at least some comparable evidence of consumer deception.[4] *See TrafficSchool.com*, 653 F.3d at 834. No such evidence has been presented. McMurray has not, for example, offered a declaration showing that one consumer, let alone an appreciable

---

[3] The Firm's marketing of itself and its regional offices as a "single" law firm is likely to bear an "immediate and necessary relation" to the equity the Firm seeks. Given the singular form of the noun "firm," "The Cochran Firm" trademark suggests that all practices bearing that mark are part of a single firm.

[4] This is not to say that consumer surveys should be required by district courts evaluating an unclean hands defense. To the contrary, consumer surveys should rarely, if ever, be necessary. This is because only egregiously misleading marketing featuring the trademark or trademarks that themselves make misleading statements may support an unclean hands defense.

number of them, has been misled.[5]  This is fatal to the defense.  *TrafficSchool.com*, 653 F.3d at 834.

In finding otherwise, the district court relied exclusively on California's Rules of Professional Conduct for lawyers to inform its understanding of how the public understands the term "law firm."  This was error for two reasons.

First, the fact that a particular State's rules of professional conduct are intended to protect the public in no way establishes that the public's understanding of "law firm" comports with the definition set forth in that State's rules.  Indeed, the definitions of "law firm" set forth in California's Rule and the ABA's Model Rules are not prohibitions.  Rather, they are relevant to determining the existence of conflicts of interest and the applicability of other professional responsibilities.

Second, even if rules of professional conduct for lawyers were relevant, McMurray has not shown that the Firm's hub-and-spoke structure is contrary to any rule.  The Firm's structure is consistent with Rule 1.0(c) of the ABA Model Rules, which broadly states that "firm" or "law firm" "denotes a lawyer or lawyers

---

[5] The majority apparently believes that the fact that a lawyer for a former client's conservator named the Firm as a defendant in a lawsuit seeking to recover a judgment is evidence that the former client was misled by the firm's advertising.  The litigation tactic of the former client's conservator's lawyer plainly does not show that the former client herself was misled by any aspect of the Firm's advertising.  In any case, the district court mentioned this judgment in connection with the Firm's "national" branding, not its "single firm" branding.

in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law." The comment on this rule demonstrates that the definition is intended to be expansive and flexible so as to better protect the public by minimizing conflicts of interest. Indeed, an ABA opinion expressly condones, "at least from the ethical point of view," the franchise-like "licensing" of a law firm's name "to create a national network of firms, all of which will use the original firm's name under a licensing agreement by which the original firm will provide all marketing for the firms in the network." ABA Op. 94-388 at 7.[6] The California Practice Guide to Professional Responsibility similarly provides that franchising of a law firm's name is permissible where "the franchisor is in a partnership with each franchisee." Cal. Prac. Guide Prof. Resp. Ch. 2-B at § 136.2 (citing Los Angeles Bar Ass'n Form. Op. 423 (1983)). The Firm complies with this guidance. As the district court found, "Plaintiff's relationship with its regional offices is composed of a network of several partnerships."

The Firm's hub-and-spoke structure also is consistent with California's Rule of Professional Conduct 1-100(B)(1), which provides that a "law firm" is, among

---

[6]      The ABA rules committee opined that such a structure is permissible for ethics purposes "[i]f all of the lawyers in the participating firms in a 'network' of licensed firms using the same name meet all of the ethical requirements that would be applicable to them if they were all lawyers in a single firm." *Id.* at 8.

10

other things, "two or more lawyers whose activities constitute the practice of law, and who share its profits, expenses, and liabilities." The district court itself found that the Firm and its regional offices have each of these characteristics to some degree, as well as characteristics of a "national" firm. The court found that the Firm has nationwide "prestige"; coordinates across offices on class actions and multi-district litigation; has numerous nation-wide standardized resources and procedures; requires regional offices to carry liability insurance;[7] vets employees and ensures "that the regional offices are managed by a managing partner that Johnnie Cochran knew"; and exerts a degree of "control over the regional offices."

**2.**

With respect to the Firm's "national" branding, neither the "inequitable" nor the "immediate and necessary relation" requirement of the unclean hands defense is met. McMurray has not shown that this advertising is misleading. Indeed, as noted, the district court itself found that the Firm has many characteristics of a "national" presence. In any case, there is no evidence in the record of actual

---

[7] Operating agreements between the Firm and its regional offices provide for shared liability. The operating agreement for the New York office, for example, states that the "Parties will indemnify each other (and each of such Party's affiliates, officers, attorneys or agents) from and against all loses, damages or claims . . . incurred in connection" with the practice, except "each Party Attorney will be solely responsible for his or her own malpractice, for which such Party Attorney will be protected by professional liability insurance coverage."

11

consumer confusion or bad intent.

Even if the "national" branding were inequitable, the Firm's conduct is not directly related to the equity the Firm seeks. The Cochran Firm trademark does not itself state that law offices bearing that mark are "national" in stature. Rather, such branding is buried in websites and legal magazines. In these circumstances, an unclean hands defense will not succeed. *See* 6 McCarthy § 31:51.

In sum, the record and the district court's own findings show that McMurray is unlikely to be able to prove by clear, convincing evidence that the Firm's advertising is sufficiently inequitable and related to the equity that the Firm seeks to allow McMurray's trademark infringement to continue.

### III.

The district court's decision has two alarming effects. First, in finding the Firm's advertising to be misleading, the district court implicitly federalizes one definition of "law firm." This not only intrudes on the domain of States, which may define "law firm" as they see fit,[8] but harms the public. The public interest is

---

[8]    In Washington, D.C., for example, a business owned and controlled by non-lawyers can be a law firm. And in California and four other States, a law firm can be made up of people who did not go to law school. I note that this case does not present the question of whether, under California or any other State's professional rules, non-lawyers may share in the profits of a law firm by way of payments for a trademark license.

better served by an expansive definition of "law firm," which ensures wider applicability of conflict-of-interest rules and other professional responsibilities.

Second, if the Firm's hub-and-spoke structure is not a "single firm," then the organizational structures of many prominent, international firms are called into question. For example, the Firm's expert states that DLA Piper, Baker & McKenzie, Dentons, Hogan Lovells, Squire Sanders, and other firms are Swiss vereins, which are organizations composed of member organizations. The Firm's hub-and-spoke structure is also used by other "law firms," such as Jacoby and Meyers. The closeness of bonds between the offices that comprise a firm varies significantly by office and firm. It does not follow that regional offices that operate more independently mislead the public or violate rules of professional conduct by holding themselves out as part of a larger, single law firm.

I would vacate the district court's order dissolving the preliminary injunction and put this trademark infringement case back on its proper course.