**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff*,

and

LOWER ELWHA KLALLAM INDIAN
TRIBE; JAMESTOWN S'KLALLAM
TRIBE; PORT GAMBLE S'KLALLAM
TRIBE,
*Petitioners-Appellees*,

v.

LUMMI NATION,
*Respondent-Appellant*,

and

STATE OF WASHINGTON,
*Defendant*,

SWINOMISH INDIAN TRIBAL
COMMUNITY; SUQUAMISH TRIBE;
MAKAH INDIAN TRIBE;
STILLAGUAMISH TRIBE; UPPER
SKAGIT INDIAN TRIBE; NISQUALLY
INDIAN TRIBE; TULALIP TRIBES;
SQUAXIN ISLAND TRIBE,
*Real-Parties-in-Interest*.

No. 15-35661

D.C. No.
2:11-sp-00002-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted August 30, 2017
Seattle, Washington

Filed December 1, 2017

Before:  Michael Daly Hawkins and M. Margaret
McKeown, Circuit Judges, and Elizabeth E. Foote,[*]
District Judge.

Opinion by Judge McKeown

## SUMMARY[**]

### Fishing Rights

The  panel  reversed  the  district  court's  summary
judgment in favor of the Lower Elwha Klallam Indian Tribe,
and held that the disputed waters west of Whidbey Island,
Washington were included in the Lummi Nation's right of
taking fish at usual and accustomed grounds and stations
("U & A") under the 1855 Treaty of Point Elliot.

---

[*] The Honorable Elizabeth E. Foote, United States District Judge for
the Western District of Louisiana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

In *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974), Judge Boldt developed a framework for determining U & As for Indian signatories to the Treaty. In Finding of Fact 46, Judge Boldt stated that the U & A for the Lummi Indians "included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle."

To determine whether the waters west of Whidbey Island were included in the Lummi's U & A, the panel followed a two-step procedure. At step one, the panel held that Fact 46 was ambiguous because it did not clearly include or exclude the disputed waters. At step two, the panel examined the record before Judge Boldt to clarify his intent, and concluded that the district court erred in excluding the disputed waters from the Lummi's U & A. The panel held that the district court improperly imposed a heightened standard in holding that logic or linguistics needed to "compel the conclusion" that contested waters be included in a U & A.

# COUNSEL

Deanne E.Maynard (argued), Brian R.Matsui, and James R. Sigel, Morrison & Foerster LLP, Washington, D.C.; Mary Neil, Reservation Attorney, Lummi Nation, Bellingham, Washington; Christopher J. Carr and James R. Sigel, Morrison & Foerster LLP, San Francisco, California; for Respondent-Appellant.

Stephen H. Suagee (argued) and Samuel D. Hough, Office of General Counsel, Lower Elwha Klallam Tribe, Port Angeles, Washington, for Petitioner-Appellee Lower Elwha Klallam Tribe.

Lauren Rasmussen (argued), Law Offices of Lauren P. Rasmussen, Seattle, Washington, for Petitioners-Appellees Jamestown S'Klallam Tribe and Port Gamble S'Klallam Tribe.

Mason D. Morisset and Rebecca JCH Jackson, Morisset Schlosser Jozwiak & Somerville, Seattle, Washington, for Real-Party-in-Interest Tulalip Tribes.

Howard G. Arnett and John W. Ogan, Karnopp Petersen, Bend, Oregon; James Rittenhouse Bellis, Suquamish Tribe, Suquamish, Washington; for Real-Party-in-Interest Suquamish Indian Tribe.

## OPINION

McKEOWN, Circuit Judge:

This appeal asks whether the Treaty of Point Elliott (the "Treaty") reserves to the Lummi Nation (the "Lummi") the right to fish in the waters west of Whidbey Island, Washington. We previously concluded that the Treaty secures the Lummi's right to fish in Admiralty Inlet because the Lummi would have used the Inlet as a passage to travel from its home in the San Juan Islands to present-day Seattle. The same result holds here because the waters at issue are situated directly between the San Juan Islands and Admiralty Inlet and also would have served as a passage to Seattle. We reverse the district court's judgment to the contrary.

### Background

The 1855 Treaty of Point Elliott secures the Lummi's "right of taking fish at usual and accustomed grounds and

stations" ("U&A").  Treaty of Point Elliott, art. V, Jan. 22, 1855, 12 Stat. 927, 928.  Over 100 years later, Judge Boldt of the Western District of Washington developed a framework for determining U&As for Indian signatories to the Treaty and other similarly worded treaties.  *See generally United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974) (*Decision I*), *aff'd*, 520 F.2d 676 (9th Cir. 1975). Litigation over the various tribes' U&As has been ongoing ever since.

Judge Boldt defined a U&A as "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters." *Decision I*, 384 F. Supp. at 332.  Importantly, a U&A cannot be established by "occasional and incidental trolling" in marine waters "used as thoroughfares for travel." *Id.* at 353.  As to the Lummi, Judge Boldt provided some general background on the tribe's fishing and techniques in Finding of Fact 45, and then made a U&A finding in Finding of Fact 46:

> 45.  Prior to the Treaty of Point Elliott, the Lummi, Semiahmoo and Samish Indians had been engaged in trade in salmon, halibut and shellfish both with other Indians and with non-Indians.  This trade continued after the treaty.  At the time of the treaty they maintained prosperous communities by virtue of their ownership of lucrative saltwater fisheries.  The single most valuable fish resource was undoubtedly the sockeye, which the Lummis were able to intercept in the Straits on the annual migration of the sockeye from the ocean to the Fraser River. *Lummi Indians developed a highly efficient*

*technique, known as reef netting, for taking large quantities of salmon in salt water.* Aboriginal Indian 'reef netting' differs from present methods and techniques described by the same term. *The Lummis had reef net sites on Orcas Island, San Juan Island, Lummi Island and Fidalgo Island, and near Point Roberts and Sandy Point.* When nature did not provide optimum reef conditions the Indians artificially created them.   Reef netting was one of the two most important economic activities engaged in by these Indians, the other being the sale of dog fish oil. These Indians also took spring, silver and humpback salmon and steelhead by gill nets and harpoons near the mouth of the Nooksack River, and steelhead by harpoons and basketry traps on Whatcom Creek. They trolled the waters of the San Juan Islands for various species of salmon.

46.  In addition to the reef net locations listed above, the usual and accustomed fishing places of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle, and particularly Bellingham Bay.   Freshwater fisheries included   the   river   drainage   systems, especially the Nooksack, emptying into the bays from Boundary Bay south to Fidalgo Bay.

*Id.* at 360–61 (emphases added) (citations omitted).

These findings formed the foundation of our earlier adjudication of parts of the Lummi's U&A.  Notably, we held that Admiralty Inlet was included in the Lummi's U&A but the Strait of Juan de Fuca was excluded.  *See United States v. Lummi Indian Tribe*, 235 F.3d 443, 445, 451–52 (9th Cir. 2000) (*Lummi I*).  Admiralty Inlet is due south of the waters contested here—the waters west of Whidbey Island.  The Strait of Juan de Fuca lies further west of both of those waters.

This dispute began in 2011.  The Lower Elwha Klallam Tribe, the Jamestown S'Klallam Tribe, and the Port Gamble S'Klallam Tribe (collectively, the "Lower Elwha") invoked the district court's continuing jurisdiction under *Decision I* to determine whether the Lummi has the right to fish in the waters west of Whidbey Island.  The district court granted summary judgment to the Lower Elwha, reasoning that *Lummi I* had determined that the waters west of Whidbey Island are excluded from the Lummi's U&A.

On appeal, we disagreed with the district court's conclusion that the law of the case doctrine applied.  *United States v. Lummi Nation*, 763 F.3d 1180, 1185–88 (9th Cir. 2014) (*Lummi II*).  Examining the decision in *Lummi I*, we noted that while there were some indications that the contested waters were excluded from the Lummi's U&A, there were strong indications pointing the other way too.  *Id.* at 1186–87.  In particular, *Lummi I*'s geography-based reasoning suggested that "the waters immediately west of northern Whidbey Island *are* a part of the Lummi's U & A." *Id.* at 1187 (emphasis in original).  Thus, we concluded that *Lummi I* had not yet decided the issue explicitly or by "necessary implication." *Id.* at 1187–88. In other words, the law of the case was not the operative standard.  Instead, we remanded for the district court to apply the usual U&A procedures. *Id.*

On remand, the district court reached the same conclusion as it did before—that the disputed waters are not included in the Lummi's U&A—and again granted summary judgment to the Lower Elwha.  The court explained that "neither logic nor linguistics would compel the conclusion that the waters to the west of northern Whidbey Island were intended by Judge Boldt to be included in the Lummi U&A."

The Lummi appealed.  Reviewing de novo, we reverse. *See Tulalip Tribes v. Suquamish Indian Tribe*, 794 F.3d 1129, 1133 (9th Cir. 2015).

**Analysis**

This is another chapter in the "ongoing saga" arising from Judge Boldt's original decision.  *See Makah Indian Tribe v. Quileute Indian Tribe*, 873 F.3d 1157, 1160 (9th Cir. 2017).  In Finding of Fact 46, Judge Boldt stated that "the usual and accustomed fishing places of the Lummi Indians at treaty times included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle." *Decision I*, 384 F. Supp. at 360.  To determine whether the waters west of Whidbey Island are included in the Lummi's U&A, we follow a two-step procedure.  At step one, we decide whether a particular finding of fact is ambiguous.  *See Upper Skagit Indian Tribe v. Washington*, 590 F.3d 1020, 1023 (9th Cir. 2010).  All parties agree that Finding of Fact 46 is ambiguous because it does not clearly include or exclude the disputed waters.  At step two, we examine the record before Judge Boldt to clarify his intent. *Id.*  Given this standard and our prior case law concerning the Lummi, we conclude that the district court erred in excluding the waters west of Whidbey Island from the Lummi's U&A.

We also highlight that the district court improperly imposed a heightened standard in holding that logic or linguistics need to "*compel the conclusion*" that contested waters be included in a U&A.  (Emphasis added).  We do not countenance such a standard because it imposes a nearly insurmountable burden on tribes in view of *Decision I*'s decades-long lookback approach.  The better approach is to construe Judge Boldt's language in light of the available evidence.

Our analysis harkens back to *Lummi I*, where we examined whether Admiralty Inlet is part of the Lummi's U&A.  We began by noting that Judge Boldt's *Decision I* does not mention Admiralty Inlet at all, so "there [we]re no linguistic clues to compare."  235 F.3d at 452.  But we reasoned that, as a matter of geography, Admiralty Inlet fell within the "marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle."  *Id.* Because "Admiralty Inlet would likely be a passage through which the Lummi would have traveled from the San Juan Islands in the north to the 'present environs of Seattle,'" the disputed area was deemed part of the Lummi's U&A.  *Id.*

This case is almost identical.  As a linguistic matter, in *Decision I* Judge Boldt does not reference Whidbey Island with respect to the Lummi's or any other tribe's U&A.  384 F. Supp. at 348–82.[1]  The only mention of "Whidbey

---

[1] The fact that later U&A decisions for other tribes make explicit reference to "the waters off the west coast of Whidbey Island" does not change our view.  *See United States v. Washington*, 626 F. Supp. 1405, 1442–43 (W.D. Wash. 1985); *United States v. Washington*, 459 F. Supp. 1020, 1056–57 (W.D. Wash. 1978), *aff'd*, 645 F.2d 749 (9th Cir. 1981) (describing fishing grounds "off of Whidbey Island's West Beach").  Just as we did not infer that Judge Boldt intended to exclude Admiralty Inlet from the Lummi's U&A simply because U&A decisions after *Decision*

Island" in *Decision I* comes in a section labeled "DEPARTMENT OF GAME POLICIES AND PRACTICES" and says that "The Game Department permits fishing for steelhead in all marine areas within its regulatory jurisdiction. Saltwater steelhead fisheries are insignificant. Most are located on *Whidbey Island* at Bush Point and Lagoon Point." *Id.* at 393, 398 (emphasis added). That reference does not indicate whether the waters west of Whidbey Island are included in "the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle." *Id.* at 360. Like Admiralty Inlet in *Lummi I*, the disputed area here is "just as likely" to be included in "Northern Puget Sound" as it is to be excluded. 235 F.3d at 452.

Turning to the geographic indicators, as we did in *Lummi I*, there is no doubt that the waters west of Whidbey Island "would likely be a passage through which the Lummi would have traveled from the San Juan Islands in the north to the 'present environs of Seattle.'" *Id.* (quoting *Decision I*, 384 F. Supp. at 360). The nautical path that we traced in *Lummi I* from the San Juan Islands to Seattle cuts right through the waters at issue here. *See Lummi I*, 235 F.3d at 452. Indeed, the waters west of Whidbey Island are situated just north of Admiralty Inlet, which is included in the Lummi's U&A, and just south of the waters surrounding the San Juan Islands (such as Haro and Rosario Straits), which are also included in the Lummi's U&A. As we have already observed, "[*Lummi I*'s] reasoning suggests that the waters immediately to the west of northern Whidbey Island would

---

*I* explicitly reference Admiralty Inlet, we decline to make such an inference here concerning the waters west of Whidbey Island. *See Lummi I*, 235 F.3d at 452; *Washington*, 459 F. Supp. at 1059 (stating that the U&A of the Tulalip Tribes includes Admiralty Inlet).

be included within the Lummi's U & A." *Lummi II*, 763 F.3d at 1187.

Importantly, expert anthropologist Dr. Barbara Lane tied travel in this corridor to fishing: "The deeper saltwater areas, the Sound, the straits, and the open sea, served as public thoroughfares, and as such, were used as fishing areas by anyone travelling [sic] through such waters." *Tulalip Tribes*, 794 F.3d at 1135. Dr. Lane also reported that "Lummi fishermen were *accustomed* . . . to visit fisheries as distant as" the endpoints of the path we carved in *Lummi I*, and "utilized" other fisheries in between. (Emphasis added). Judge Boldt lauded Dr. Lane's work as "exceptionally well researched and reported"; Dr. Lane testified extensively at trial and Judge Boldt relied heavily on her report in Finding of Fact 46 and throughout *Decision I*. 384 F. Supp. at 350.

The Lower Elwha's most persuasive argument is that general evidence of travel cannot by itself establish U&As. Judge Boldt defined "usual and accustomed grounds and stations" as "every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters." *Id.* at 332. He also specified what was not included: "Marine waters were also used as thoroughfares for travel by Indians who trolled en route. Such occasional and incidental trolling was not considered to make the marine waters traveled thereon the usual and accustomed fishing grounds of the transiting Indians." *Id.* at 353 (citations omitted). In the Lower Elwha's view, Judge Boldt's statements stand for the principle that transit through an area is insufficient for a U&A finding.

Although the Lower Elwha's general statement is accurate as far as it goes, in *Lummi II*, we already addressed

and rejected this argument in the specific context of the Lummi's U&A.  We held that "the Lummi's use of 'the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle' was more than mere 'occasional and incidental trolling.'"  *Lummi II*, 763 F.3d at 1187.   We explained further: "If to 'proceed through Admiralty Inlet' rendered Admiralty Inlet a part of the Lummi U & A, then to proceed from the southern portions of the San Juan Islands to Admiralty Inlet would have the same effect: to render the path a part of the Lummi U & A, just like Admiralty Inlet."  *Id.*   That explanation covers our exact situation and fits within our long-accepted framework, which requires looking at the evidence "before Judge Boldt that the [tribe] fished *or traveled* in the . . . contested waters."  *Tulalip Tribes*, 794 F.3d at 1135 (emphasis added) (citing *Upper Skagit*, 590 F.3d at 1023).[2]

We conclude that the waters west of Whidbey Island, which lie between the southern portion of the San Juan Islands and Admiralty Inlet, are encompassed in the Lummi's U&A.  In coming to this conclusion, we need not

---

[2] It is true, as the Lower Elwha points out, that the evidence in *Tulalip Tribes* was more than general evidence of travel.  For example, in addition to evidence that the Suquamish "would have passed through the waters west of Whidbey Island, and likely would have fished there while traveling," there was evidence from an expert report that the "Suquamish travelled [sic] to Whidbey Island to fish."  794 F.3d at 1135.  Nevertheless, *Tulalip Tribes* appears to indicate that the general evidence of travel was "some evidence" that was sufficient to satisfy the necessary standard.  *See id.* ("This general evidence, too, constitutes some evidence before Judge Boldt . . . .").  And, in any event, the Lower Elwha cannot overcome the court's strong statements in *Lummi I* and *Lummi II* that counter its position.

determine the outer reaches of the Strait of Juan de Fuca for purposes of the Lummi's U&A.

**REVERSED AND REMANDED.**